## M. F. HYDE et al. *v.* A. WARREN et al.

1. MORTGAGE — POWER OF SALE TO MORTGAGEE VALID. — A power of sale in a mortgage, conferred on the mortgagee himself, is valid, and may be executed *in pais* without resort to a court of equity.

2. SAME — POWER IRREVOCABLE — ITS EXECUTION CUTS OFF EQUITY OF REDEMPTION. — Such a power is irrevocable, and, when fairly executed, cuts off the equity of redemption.

3. QUÆRE — AS TO THE RIGHT OF MORTGAGEE WITH POWER OF SALE IN HIM-SELF TO PURCHASE AT HIS OWN SALE. — The court declined to give any opinion on this question, but cited several cases in which it was said this right was recognized.

4. MARRIED WOMEN — CONVEYANCE OF LAND — CASE IN JUDGMENT. — Where a married woman, her husband joining her in the deed, conveyed her land with the formalities prescribed by law, by deed, which recited a pecuniary consideration, to enable the grantee, as owner, to obtain credit on the land, and he did obtain such credit, and mortgage the land to those who had no knowledge of the arrangement between the grantors and grantee: *Held*, that the party dealing with said grantee of the married woman was unaffected by any claim of hers.

APPEAL from the chancery court of Clarke county. DRANE, Chancellor.

The bill charges that one Dearing and wife, on 17th September, 1863, sold and conveyed to Warren and M. F. Hyde, a *feme covert*, and the wife of A. J. Hyde, a tract of land in Clarke county, which is described in the deed exhibited with the bill, for $14,000 ; that, on the 10th day of August, 1866, Hyde and wife conveyed the same land to Warren for $5,000, but, by accident or design, misdescribed the land by impossible land office divisions, so as to destroy the identity ; that it was really the intention of the parties to buy and convey the same land which Dearing and wife had sold to Warren and Mrs. Hyde ; that Warren afterward, on 11th February, 1867, desiring to get credit and advances from Patrick, Irwin & Co., mortgaged to them the same land conveyed to him by Hyde and his wife, inserting in the mortgage the same erroneous and impossible numbers, but intending to mortgage the very land which Dearing and wife had conveyed to Warren and Mrs. Hyde ; that the mortgage debt not being paid by Warren, the mortgage

was foreclosed, and the land sold to James Patrick, a member of the firm of Patrick, Irwin & Co. The bill then states that Hyde and his wife had commenced "some sort of" proceedings in the probate court of Clarke county for a partition of the land between Mrs. Hyde and Warren, well knowing that they had, in fact, conveyed to Warren the same land, but designing, corruptly, to avail themselves of the mistake in the description of the land.

The bill prays for an injunction, restraining Hyde and wife from further prosecuting their proceedings for partition of the land; that the mistakes above referred to in the descriptive part of the deeds be corrected, and the title to the lands actually intended to be conveyed and mortgaged, be decreed to Patrick the purchaser under the mortgage.

The answer of Hyde and wife admits the conveyance from Dearing and wife, as alleged in the bill. Mrs. Hyde denies that she ever conveyed her interest in the land to Warren, and denies that she ever intended to convey to him by any description. She avers that Warren never paid her any consideration for her half of the land which Dearing and wife had conveyed to herself and Warren. The husband, A. J. Hyde, says that he has no interest in the land, except as husband of M. F. Hyde. He admits the pendency of proceedings for partition of the land, as alleged in the bill ; and both respondents disclaim all knowledge of the alleged pecuniary transactions between Warren & Patrick, Irwin & Co.

It appears, by exhibit D to the bill that the lands were sold under the mortgage (which contains a power of sale to the mortgagees) without any decree of court, but simply by virtue of that power of sale contained in the mortgage.

The only depositions taken in the cause were those of complainant Warren and defendant A. J. Hyde.

Warren, in his deposition, after stating the conveyance of lands from Dearing and wife to himself and Mrs. Hyde, and from Hyde and wife to himself, says that the object of this conveyance to him, was to enable him, by a pledge of the land, to buy a stock of goods in New York to be retailed

by himself and A. J. Hyde, the husband.; but that, failing to make the arrangement in New York, with the assent of all parties he raised the money on the lands in Mobile by an arrangement with Patrick, Irwin & Co. The goods, he says, were purchased for the firm of Warren & Hyde, and that himself and A. J. Hyde constituted that firm, although he admits that, on a dissolution of the firm, he took the written obligation of Mrs. Hyde to settle the partnership liabilities. Warren then goes on and states the mistake in the different conveyances as to the description of the land, and mentions the true description which was intended. He says that he received the deed from Hyde and wife from the former, and that it had the acknowledgment on it when he received it from A. J. Hyde, and he says that that deed was delivered to Patrick, Irwin & Co., from which to write the mortgage, and thus the mistake in the description occurred. He testifies that Hyde and wife never went into possession of the lands, but that he himself had the possession, and that he and A. J. Hyde divided the profits arising from the cultivation of the same. He says that Mrs. Hyde never was a partner in the mercantile business, and was never represented as such to Patrick, Irwin & Co. He admits that he has bought four hundred acres of land from Patrick since the sale under the mortgage, for which he agreed to pay $2,000. He states that the money of himself and A. J. Hyde, the husband, was used to pay Dearing for the land, but does not know why the deed was made to himself and Mrs. Hyde.

The other witness, A. J. Hyde, states that M. F. Hyde is his wife; that they lived together in September, 1863, in Paulding, Jasper county, and that he was farming at that time in partnership with Warren; that witness himself inserted his wife's name, with that of Warren, in the deed from Dunning and wife ; that witness inserted his wife's name in that deed because he had himself as much land as he wanted, and he desired to settle the land on his wife; that witness, at the time that deed was made, was not pecu-

niarily embarrassed, but had more property than would pay all his debts; that M. F. Warren, his wife, was not consulted about making the deed of her lands to Warren, nor was she ever present at any conversation about that matter between himself and Warren; that the wife of witness simply signed that deed to Warren, if she signed it at all, upon witness presenting the same, and asking her to do so, and that she did not even know the object of the deed or its contents. He says that his wife was not a partner in the mercantile house of Warren & Hyde, and that she never signed any obligation to pay any of the debts of the house, but that witness did sign some writing to that effect, in her name, and without authority. He says that the firm of A. Warren & Co. had nothing to do with Warren's indebtedness to Patrick, Irwin & Co.

The third and fourth paragraphs of the bill, not being answered, were taken for confessed.

A final decree was rendered by the chancellor, granting the relief prayed for.

*Evans, Ford & Henry* and *Johnston & Johnston,* for appellants.

The decree in this case is not warranted by the facts and the equitable considerations embraced in the proceedings. The husband of M. F. Hyde, in September, 1863, being then solvent, bought, jointly with A. Warren, a tract of land of considerable value, and had the conveyance made to said Warren and his wife. By this conveyance, Warren and Mrs. Hyde were seized in fee, in equal parts of that estate. The husband, A. J. Hyde, intended this as a settlement on his wife, under the laws of Mississippi. Afterward, in August, 1866, there was a conveyance of this land (although erroneously described) from Hyde and wife to A. Warren, made for the purpose of enabling Warren to buy a stock of goods, to be retailed by him and A. J. Hyde as partners. No purchase-money was paid to Mrs. Hyde, or to her husband. Mrs. Hyde, who owned one-half interest,

did not know the contents or object of this conveyance to Warren. She merely signed the paper presented by her husband, and he handed it to Warren.

We submit that the deed from Hyde and wife to Warren is void for want of consideration. The proof abundantly shows that nothing was paid. In equity, this half-interest in the land is still in Mrs. Hyde. Warren, certainly, might mortgage to Patrick, Irwin & Co. his undivided half-interest, but he had no power to incumber Mrs. Hyde's interest.

We have said that Hyde had this attempted sale of his wife's interest made to Warren to enable him, by a pledge of the entire tract, to buy a stock of goods in New York, to be sold by himself and Warren as partners, but this object was not carried out. On the contrary, Warren mortgaged the lands to Patrick, Irwin & Co., for a debt with which Hyde had no connection. This was a fraud. The sale to Warren by Hyde and wife was on a condition, which was broken, and, in equity, this would have defeated the conveyance, even if it had been supported by a consideration. Besides, it is not clear that Mrs. Hyde ever signed the deed to Warren. Her husband says, in his deposition, that she was never consulted about the conveyance, and, if she signed it at all, she did so in ignorance, and merely because he asked her to sign it.

Assuming, however, that Warner had power to incumber Mrs. Hyde's interest, by the mortgage to Patrick, Irwin & Co., still the sale under that mortgage to Patrick is void, because it was made without any proceedings in court for foreclosure. True, the mortgage contains a power of sale, but it is·a well-settled principle that resort must be had to a court of equity and a decree for sale rendered before such power of sale can be exerted. Ford v. Russell, Freem. Ch. 42 ; 1 Rand. 306 ; Clay v. Willis, 1 Barn. & Cress. 364 ; Wright v. Rose, 2 Sim. & Stu. 323.

Mrs. Hyde was entitled to her day in court on an application for foreclosure. Warren was entitled to his day in court ; and certainly a reference and account ought to have·

been taken, instead of leaving to the mortgage creditors the dangerous power of selling for any sum they might demand.

Now, as the final decree confirms the title to the purchaser under the mortgage sale, the decree must be reversed for that cause. So far as the errors in the description of the land is concerned, we admit that that matter seems to have occurred by mere mistake ; but, still, as Mrs. Hyde is proven never to have intended to alienate her land, and as she merely signed a deed in fact purporting to convey no land of hers, and as she never received a cent for her interest, she is not in a position where mistakes in description could affect her interest. We submit, therefore, that the decree below must be reversed.

In addition to the above points, we suggest that Patrick, being one of the mortgagees, had no right to purchase at the mortgage sale. His interest was to produce a small price at the sale. And the sale ought to have been submitted to court for exceptions to a confirmation, which is another reason for the rule that mortgages must be foreclosed by decree.

*S. A. D. Steele*, for appellees.

The bill in this case was filed by the defendants, Warren and Patrick, Irwin & Co., against M. F. and A. J. Hyde, to correct a mistake in a deed of conveyance from Mrs. Hyde and her husband, to Warren, and to correct a mistake in a deed in trust from Warren to Patrick, Irwin & Co., and also in a deed from Patrick, Irwin & Co., to James Patrick. The same mistake occurs in the three deeds, and arises from the fact that the deed from Mrs. Hyde was used as a guide, as to the numbers of land, in preparing the subsequent deeds. All the deeds are made exhibits to the bill. The first contains a correct description of the lands, and is a deed from J. M. Dearing and wife to A. Warren and M. F. Hyde, marked exhibit A. The second is a deed from M. F. and A. J. Hyde, to A. Warren, marked exhibit B. The third is a deed in trust, or mortgage from A. Warren

to Patrick, Irwin & Co., marked exhibit C. And the fourth is a deed from Patrick, Irwin & Co., to James Patrick, marked exhibit D. In the last three deeds there is a mistake in the description of the lands, which will be particularly pointed out presently. The bill states that this misdescription was made by mistake.

Mrs. Hyde and her husband answer jointly, admitting the conveyance from Dearing to Warren and Mrs. Hyde, of the lands described in paragraph No. 1, and in the deed marked A; she denies that she conveyed her land to Warren, or that she made any fraudulent misdescription thereof. She does not say any thing in her answer in regard to the deed to Warren, marked B, nor does she in any way explain it; or explain what lands were intended to be conveyed by it. She denies having received any consideration for the land. A. J. Hyde disclaims any interest in the land except such as he may have by virtue of his relation to his wife, M. F. Hyde.

As to the power of a court of equity to correct mistakes in written instruments, it is scarcely necessary to quote authority. It is one of the established grounds of equity jurisdiction. Willard's Eq. Jur., 75; 1 Story's Eq. Jur., §§ 153–166, and notes; Hunt v. Rausmainer's Admrs., 1 Pet. 13.

The jurisdiction to grant the relief being conceded, I propose to inquire whether the complainants have made such case as to entitle them to the relief granted by the decree. The cause was set down on bill, answer, exhibits, *pro confesso* as to one paragraph of the bill not answered and the proofs, and the chancellor decreed that the mistakes be corrected.

The bill is sworn to, and I insist that the answer does not negative the material allegations of the bill; but this point will be considered hereafter. I propose in the first place to call special attention to the description of the lands in the Dearing deed to Warren and Mrs. Hyde, and also to the description of the deed from Mrs. Hyde and husband to

Warren. The deed from Dearing is marked exhibit A, and the deed from Mrs. Hyde and husband is marked exhibit B, to the bill:

| DESCRIPTION OF LANDS IN EXHIBIT A. | DESCRIPTION OF LANDS IN EXHIBIT B. |
|---|---|
| N. W. ¼ and W. ½ of S. W. ¼ S. 17.<br>N. E. ¼ and E. ½ of N. W. ¼ S. 18.<br>W. ½ of N. W. ¼ S. 20, all in T. 2,<br>R. 14 E. | N. W. ⅛ and W. ¼ of S. W. ⅛ S. 17.<br>N. E. ⅛ and E. ¼ of N. W. ⅛ S. 18.<br>W. ¼ of N. W. ⅛ S. 14, all in T. 2, R.<br>14 E. |

This description, I insist, of itself shows the mistake, and if there were no other evidence to support the bill but these two deeds, the mistake appears, with all the clearness required to authorize the decree. It will be seen that where the Dearing deed describes a fraction of a section, the Hyde deed describes the same fraction divided by two, of the same section, township and range. It will be further observed that the Dearing deed conveys to Mrs. Hyde and Warren an estate in common to the lands. Code, 309, art. 18.

What was the estate of Mrs. Hyde under the Dearing deed? She was a tenant in common with Warren, and her interest was an undivided half interest in the land. What interest would she convey by a good and valid deed to Warren? The undivided half interest, and the effect of such a deed would invest Warren with title to the entirety. This is an absolute deed in fee to the land, and as such, conveys to Warren whatever interest she had in the land. Considering her deed in connection with Dearing's deed, what land did she intend to convey? Surely there must have been some intention, and that intention, to some extent at least, ought to be gathered from the deed. It cannot be said that the description in the Hyde deed is the description intended, for the description in this deed is not only erroneous land office numbers, but they are, in fact, impossible numbers of land. We are then forced to conclude that the deed was made without any intention to convey land, or that there was a mistake. One or the other conclusion is irresistible. The law will not allow a presumption that so solemn an act as the execution of a deed was performed without some intention. I then am forced to conclude that the design,

the intention, in the execution of this deed, was to convey lands, and lands to which the vendor had title; but as the deed really conveys no lands, and as there is an attempted description of lands in the deed, I conclude that there is a mistake in the deed.   This is the irresistible conclusion from this deed alone; but from this and the Dearing deed considered together, we may, in a great measure, discover, both that there is a mistake, and the intention.   Mrs. Hyde owned a half interest, undivided, in the Dearing land.   She executed to Warren a deed, and it will be seen by a comparison that the section, township and range, in both deeds, with a slight exception which I shall notice presently, are identical.   By the same comparison, it will be seen that, by the divisions of the fractions in the Dearing deed by two, you have the description in the Hyde deed, in every particular.   In the absence of an averment in the answer denying or explaining the Hyde deed, what is the inevitable conclusion from this comparison?   Is it not that she intended to convey the interest she had in the Dearing land, and the draftsman of the deed was of opinion that this division would convey her interest?   This seems to me to be the irresistible conclusion.   If it were possible to conceive of the division of a section into the fractions contained in the Hyde deed, it would embrace some part of the Dearing lands.   Then as the deed conveys, by mistaken numbers, lands in which the vendor had some interest, are we not forced to conclude that the intention was to convey the title she had, or that she committed the folly of executing a solemn deed without any intention?

But it will, perhaps, be insisted that this argument does not hold good as to the lands last described in the deed. This land is described as being in section twenty in the Dearing deed, and section fourteen in the Hyde deed; but the township and range are the same, and the fractions of the sections are the same in both deeds, except that the fractions in the Hyde deed are the fractions in the Dearing deed divided by two.   Take this in connection with the

answer and I think the same conclusion is irresistible. It will be borne in mind that the deed was signed, sealed and delivered, and acknowledged in strict conformity with the statute in relation to the execution of deeds of married women, and was filed as exhibit B to the bill. I insist that this called for an explicit answer from the defendants, and a full explanation of the deed and its purposes. The bill states that the numbers of land in this deed are impossible numbers; and that the erroneous description was made by mistake, and that the land intended to be conveyed was the identical lands conveyed by Dearing to Warren and Mrs. Hyde, and described in paragraph one of the bill. The answer does not deny the execution of this deed, nor does it deny that it was intended to convey the lands claimed, nor does it deny that there was a mistake in it. It simply denies that Mrs. Hyde conveyed her lands to Warren, or that she made any fraudulent misdescription of lands. This is not inconsistent with the theory that there is a mistake in the deed. She could well say she had not conveyed her lands to Warren, for the mistake in the deed was such as that the description in the deed did not cover the lands. She might well say that she made no fraudulent misdescription, for it might have been, and perhaps was, an innocent mistake. She does not deny the mistake. The bill calls for discovery, and furnishes all the information in the possession of the complainants, and we are met by an evasive answer on the very gist of the bill. The averment in the bill is positive; yet the answer is evasive. This of itself casts doubt and suspicion on the answer. The knowledge of the facts called for are peculiarly within the knowledge of the defendants, and being suppressed and evaded by them, we must conclude that a discovery of the facts would be damaging to them. The answer not only does not weaken, but strengthens, the deduction of the mistake from the deeds.

But my position is conclusive, when we consider the evidence in connection with the pleadings. The only testimony in the cause is that of Warren and A. J. Hyde. An

order was made to examine Mrs. Hyde, but she was not examined.

The fact that she was not examined is a significant fact. She is the only person, except Warren, who knew all the facts. She is the only person by whom Warren's testimony, in one or two material particulars, could possibly have been contradicted. As she was present, and the order was taken to examine her, and as her testimony in open court would have been the fullest on some of the material facts, except the testimony of Warren, that could be had, I am forced to the conclusion that her testimony would have been damaging to the defense. This conviction is strengthened by the evasive answer.

As Warren and Hyde were the only witnesses examined, and they are both parties to the record, interested witnesses, their credit comes under the rule of the statute making parties competent witnesses.

Warren's testimony is full and explicit that the land intended to be conveyed was the land described in the Dearing deed, and in paragraph No. 1 of the bill. On this point his answers are full, direct and positive. He states that he had conversations with Hyde, and with Mrs. Hyde also, on the subject of the conveyance, and it was agreed that Mrs. Hyde should convey the land to him, and that he should hypothecate the land in New York in the purchase of a stock of goods for himself and Hyde; that, after these conversations, Hyde brought him the deed, with other deeds, and that this deed was acknowledged by Mrs. Hyde previous to the time it was delivered to him by Hyde; that he went to New York, but failed to hypothecate the land for the goods; that he bought the goods on his own credit, shipped them to De Soto, and the business was opened by himself and Hyde as originally designed; that afterward, with the consent of Hyde and wife, he went to Mobile and mort-gaged the lands to Patrick, Irwin & Co., and drew on them for the payment of the debts contracted in New York for the goods; that afterward the land was sold under the

mortgage and bought by Patrick; that in all the deeds subsequent to the Hyde deed, the lands are described as in that deed, it having been used in preparing the mortgage, and the description in the mortgage followed in preparing the deed to Patrick; that he did not discover the mistake in Mrs. Hyde's deed until the day the bill in this cause was prepared; that it was then pointed out to him by his counsel; that he held the possession of the land from the time he received the deed from Mrs. Hyde until the trust sale, and that, after the purchase by Patrick, he rented it from Patrick; that he had continuously resided on, and cultivated, the land from the time of the purchase until the present time; that Hyde and wife had never had possession of it.

The only testimony offered by the defense is the testimony of A. J. Hyde. His testimony is not directly in conflict with Warren's on any material point; he does not show a distinct and clear knowledge in regard to some of the material facts deposed to; it is equivocal and unsatisfactory; he does not deny delivering the deed to Warren, but uses language that implies doubt as to whether it was executed, and still admits that the signatures to it are his own and his wife's. On this point special attention is called to the cross-examination of Hyde.

I insist that, on a strict examination of Hyde's testimony, it will be found that he does not contradict any material statement of Warren. There are facts deposed to by Warren that Hyde knows nothing of, but on these points he does not and cannot contradict Warren. Then, to give both Warren and Hyde full credit, and take their testimony in connection with the deeds, answer and other facts of the case, the complainants are entitled to the relief. We have seen that the mistake in the Hyde deed is evident, and, when taken in connection with the testimony and all the facts of the case, it is clear that the intention was to convey the land described in the Dearing deed. I hold that Hyde does not contradict, but corroborates, Warren. But

if I am mistaken in this, Warren and Hyde are both parties to the record, and interested witnesses, and their testimony, and the credit to be given them, is controlled by the statute. The deposition of a party is in no case to be taken; "but the testimony of parties and interested witnesses are to be taken in open court, and is to have just such weight as the court or jury trying the cause, in view of their interest and the facts and circumstances of the case, they may think them entitled to." Code, 510, art. 190.

The weight of the testimony is left to the court or jury trying the cause. This is wise legislation if the spirit of the act is observed. The court and jury trying the cause are specially qualified to determine the credit of an interested witness, when he is examined in open court and in their presence. This is specially true in a chancery case, where the judge considers the testimony, with special reference to its bearing on the law of the case, and is himself generally proficient in the detection of perjury in judicial examinations of witnesses. But I submit that this rule applies alone to the inferior court; to the court or jury trying the cause; to the court who saw the witness examined, and witnessed his deportment on the stand. The appellate court has only the testimony on paper, and can bring none of these appliances for the detection of perjury, to aid it in determining the credit of interested witnesses. I hold that the credit of interested witnesses is not and cannot be the subject of review by the appellate court. To hold that the appellate court can review and reverse the ruling of the court that tried the cause, as to the credit of such witnesses, is to hold that the statute can be ignored altogether.

I understand the inquiry of this court to be, "Is the judgment below clearly wrong?" This is giving to the inferior courts nothing more than the legal presumption in favor of their action, which prevails in reference to the judgments of all courts, and, in fact, in reference to the official acts of all officers. Dickson v. Parker, 3 How. 219;

Leflore v. Justin, 1 Smedes & Marsh. 381; Elzy v. Stone, 5 ib. 21; Guion v. Doherty, 43 Miss. 551, 552.

On the question of credit to interested witnesses, Handy, C. J., in a well-considered opinion, quotes the language of the Code. Southern Express Company v. Wolfe, 41 Miss. 79. This case was reversed because the court charged the jury that they should rely on the testimony of the plaintiff. The high court said, that this was equivalent to charging the jury that they should credit his testimony, when the statute left the question of credit to the jury themselves. This is deemed a conclusive authority on this point. The chancellor having himself, in open court, witnessed the examination of the parties, and, having made a decree, this court will not disturb the decree, if it can be sustained on Warren's testimony, in connection with the other facts of the case, even though Warren should be contradicted by Hyde. The chancellor having considered the testimony of these interested witnesses, and given credit to Warren, his decision is not subject to review; on this point, it is conclusive.

A court of chancery will reform a mistake in a deed when the mistake is made out to the satisfaction of the court. The rule, as laid down by Chancellor Kent, is, "does it (the evidence) satisfy the mind of the court." Gillespie v. Moon, 2 Johns. Ch. 597; Lyman v. United Ins. Co., ib. 630.

I call special attention to the case of Gillespie v. Moon, because in that case Chancellor Kent has reviewed the authorities, both English and American, and clearly defined the rule in such cases. This case, I hold, is brought clearly within the rule for relief as laid down in that case.

It may be insisted that Patrick, Irwin & Co. had no right to make the sale, they being beneficiaries in the deed. Whether that be so or not, Warren is the only person that could be heard to make the objection. 1 Hill. on Mort. 141.

If tenable, he might make the objection; but I insist that Mrs. Hyde, having sold her interest in the land to Warren, she cannot be heard to make the objection. She is not in

possession of the lands, and, having parted with her title, it is a matter of no interest to her, whether the sale was valid or invalid.  If she sold her interest in the land, and a mistake is found in the deed, and Warren makes no objection, the court will reform the deed, if the "evidence satisfies the mind of the court."

But I insist that the rule established by the highest authority is, that the mortgagee, under a power of sale reserved in the mortgage, may sell, and thus foreclose the equity of redemption.  I can conceive of no reason against it.  There are circumstances under which the mortgagee should not sell, and under which a court of equity would restrain a sale, and appoint another to execute the trust; but, when there is no dispute as to the amount of the debt, and no objection on the part of the mortgagor, and no fraud in the sale, I submit that there can be no equitable reason, urged by a stranger, against the execution of the power of sale by the mortgagee.  This I understand to be the settled doctrine in England and this country.  For a review of the English and American authorities, see 1 Hilliard on Mort. 136, *et seq.*

Again, it may be urged that Patrick, being one of the firm of Patrick, Irwin & Co., could not become a purchaser at the sale by the firm.  I insist that even the firm might have become the purchaser.  They were not trustees holding an interest adverse to their *cestui que trust;* nor was their competition, as bidders at the sale, adverse to the interest of the mortgagor.  1 Hilliard on Mort. 142, and notes; Richards v. Holmes, 18 How. (U. S.) 143; Slee v. Manhattan Co., 1 Paige, 52.

SIMRALL, J. :

This bill was exhibited to correct a mistake in the description of the lands mentioned in the pleadings, and the deeds exhibited therewith.  It is not controverted in this court, that the deed from A. J. Hyde and wife to Warren, and the mortgage from Warren to Patrick, Irwin & Co.,

and the deed from the latter to James Patrick, were intended to convey the lands described in the deed, from J. M. Dearing and wife to A. Warren and Mrs. F. M. Hyde, wife of A. J. Hyde. It is conceded that the misdescription and mistake exists. The complainants would, therefore, be entitled to the relief sought by their bill, unless other equities are disclosed which should defeat it. But it is said that the sale made under the mortgage to Patrick is void, because, although the mortgage confers a power of sale on the mortgagee, the power cannot be executed *in pais;* but resort must be had to a court of chancery. That view of the subject seems to have been adopted by the chancellor in Ford v. Russell, Freeman's Ch. 49. The cases referred to by the learned chancellor of Clay v. Willis, 1 Barn. & Cress. 364; Wright v. Rose, 2 Sim. & Stu. 323; and 1 Rand. (Va.) 306, do not support his position. The English cases involved the question, "to whom did the surplus go after a sale?" and the further question whether "the mortgagor had the equity of redemption." If the sale was made by the morgagee in the life-time of the mortgagor, then the surplus would be assets, to be disposed of by his legal representatives; if after his death, then the heir, upon whom the equity of redemption had descended, would be entitled. The case in 1 Rand. concedes that a sale made by the mortgagee would pass the legal title, but would not bar the equity of redemption. Neither of the cases go the length of holding that a sale made by the mortgagee is void. The power of sale does not change the redeemable character of the instrument, which is the specific characteristic of a mortgage. This right remains so long as the power has not been executed. Eaton v. Whiting, 3 Pick, 490, and several other cases hold that unfairness is fraud. The mortgagee, either directly or through another person, may be a purchaser. Richards v. Holmes, 18 How. (U. S.) 143; Howard v. Davis, 6 Tex. 174; Bergen v. Bennett, 1 Caine's Cas.; Glen v. Manhattan Co., 10 Johns. 185; Hilliard on Real Prop.; Erskin v. De Baum, 3 Tex. 3. The grant of the

power is irrevocable ; it does not cease on the death of the mortgagee.  Where the power was to A. and his administrator and assigns, it was held, after the death of A., that his administrator could well execute it.  Collins v. Hopkins, 7 Clarke (Iowa), 463.

In the cases reported in 1 Caine, and 10 Johns., the distinction is taken between a purchase made by a trustee, and the *cestui que trust ;* the former sustains a confidential relation to all the parties to the instrument; the latter is interested in making the property pay off the debt, and in enhancing the price at the sale.  Certainly the better practice is to resort to chancery for a foreclosure and sale ; very slight circumstances of unfairness or imposition where the mortgagee purchases would be sufficient to avoid the sale. We give no opinion on the point, whether, after a purchase by the mortgagee under a power of sale, the relation between himself and the mortgagor is so changed, as that the equity of redemption is cut off, as would be the case were a stranger a purchaser, according to the better reason, and the weight of authority.  Nor is it necessary to announce as a positive opinion, whether the mortgagee may be a purchaser or not. Treating the deed to the purchaser under the mortgage as void or voidable for any sufficient reason, Mrs. Hyde, in whose behalf the objection is made, has no interest in the question, and would not be affected by a decision one way or the other. The moment it is conceded that there is a mistake in the deed from her and her husband to Warren, and a case is made which would warrant a reformation of the misdescription of the premises, then it is established that the " right" to the lands have departed from her, and vested in Warren, and it is a matter of no concern to her, whether the title passed by the sale to Patrick, or not, under the mortgage which Warren made to Patrick, Irwin & Co.  If Warren does not question that conveyance, or seek to avoid it, she has no interest to do so, for, if that sale were invalid, the mortgage would be restored, or the title would still be in Warren.  She, therefore, can set up nothing against the deed to Patrick

which she could not oppose to her conveyance to Warren. But it is said that her conveyance to Warren is invalid, because no consideration inured to the wife. The twenty-third section of the statute (Rev. Code, 335), respecting "the separate property of married women," imposes no restriction upon the "sale, conveyance or mortgage " of the separate property of the wife, except that the deed shall be executed, and acknowledged, with the prescribed formalities, and except also, that she shall not mortgage or incumber, for the separate debts of the husband, "beyond the amount of her income." In cases arising under the act of 1839, the doctrine of this court was, that as that act conferred the power of conveying by deed duly acknowledged, it also embraced the lesser power of incumbering by mortgage ; and that an incumbrance, created for the debt of the husband, bound the *corpus* of the property. James v. Fisk, 9 Smedes & Marsh. 144; Sessions et ux. v. Bacon, 23 Miss. 272; Russ v. Wingate, 30 ib. 445; Whitworth v. Carter, 43 ib. 73. The deed relates to a pecuniary consideration. The evidence is, that the lands were originally paid for by the joint means of Warren, and her husband, A. J. Hyde ; and that, at the husband's instance, the wife's name was inserted in the deed. Hyde and wife conveyed to Warren, so that he might by a pledge of the lands raise means to purchase a stock of goods, for account of Mr. Hyde and himself, and that the mortgage was executed to Patrick, Irwin & Co., of Mobile, for moneys and credits advanced for that object. Warren exhibited the deed of Hyde and wife to himself, as evidence of his title, and a guide in drafting the mortgage. They had no knowledge of the understanding or arrangements between Hyde and wife and Warren, and are not affected by them. Hyde and wife put it in the power of Warren to appear as owner, and to deal with the property as such.

*Decree affirmed.*