# Otis *v.* McMillan *&* Sons.

*Action for Rent, by Assignee of Written Lease.*

1. *Conveyance of leased premises during term.*—When lands, subject to a lease for years, are conveyed by the lessor during the term, by absolute deed, mortgage, or deed of trust in the nature of a mortgage, the grantee takes subject to the lease, and the rights of the lessee are unaffected: he is protected in the payment of rent to the lessor until notice

[Otis v. McMillan & Sons.]

of the conveyance, and the grantee becomes entitled to the rents accruing after notice.

2. *Same ; sale under power in mortgage.*—When lands are sold under a power contained in a mortgage, or deed of trust in the nature of a mortgage, the sale cuts off and bars the equity of redemption as effectually and completely as a decree of foreclosure in a court of equity, passing to the purchaser the entire estate, both legal and equitable, subject only to the mortgagor's statutory right of redemption ; and the lands being subject to a lease, executed by the mortgagor prior to the mortgage, all the rights thereby secured to the mortgagor, as lessor, also pass to and vest in the purchaser.

3. *Estoppel as between landlord and tenant.*—A tenant, while holding under the lease, is estopped from disputing the title of his landlord ; but he may show that his landlord's title has expired, or has been transferred, not reserving the rents, or has passed to another by operation of law ; and in like manner, when the landlord has transferred all his title and interest to another, to whom the tenant has attorned, the landlord is estopped from asserting against the tenant any rights under the original lease.

4. *Statutory right of redemption ; merger of lease in reversion.*—The right of redemption secured by statute to a debtor whose lands have been sold under execution, decree in chancery, or power of sale in a mortgage or deed of trust (Code, § 2877), is neither property, nor a right of property, and does not prevent the purchaser at the sale from selling and conveying in fee to a tenant in possession under a lease prior in date to the mortgage ; and on such sale and conveyance, the lease is extinguished, the term being merged in the fee by operation of law. (STONE, J., *dissenting*, held that the purchaser at the sale acquired only a conditional estate, subject to be defeated by the redemption of the premises by the mortgagor, within the time allowed by law ; and such redemption being made, that the lease was not extinguished, or merged, by the intermediate conveyance to the lessee.)

5. *Acceptance of new lease.*—The acceptance of a new lease for years by the tenant, during the term covered by the former lease, is a surrender and extinguishment of the former by operation of law ; and this principle applies where, the leased premises having been sold and conveyed by the lessor, reserving the right to re-purchase within a specified time, the lessee accepts a new lease from the purchaser, whose deed contained an express stipulation that, if he should make any lease during the period allowed for the re-purchase, "such lease or agreement shall, notwithstanding the re-purchase, if made, remain in full force and effect, and be valid and effectual against said J. [vendor] and his assigns ;" although the new lease contained a provision that, in the event of the re-purchase within the period allowed, "this agreement is to be null and void, and of no effect." (STONE, J., *dissenting*, held that this stipulation, and the re-purchase by the original lessor during the time allowed him, prevented the acceptance of the new lease from operating as a surrender or extinguishment of the former.)

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. H. T. TOULMIN.

This action was brought by the appellees, suing as partners, against William Otis, and was commenced on the 22d December, 1877. The action was founded on a written lease executed by and between J. F. Jewett, as lessor, and said Otis as lessee ; the plaintiffs claiming as the assignees of Jewett, and seeking to recover the rents which, by the terms of the lease, accrued

[Otis v. McMillan & Sons.]

by quarterly installments, between the 1st September, 1876, and the 1st December, 1877. Under the instructions of the court, the plaintiffs had a verdict and judgment, for $1,385. The appeal is sued out by the defendant, who here assigns as error the rulings of the court below on the pleadings, and the charges given and refused. All the material facts are stated in the opinions. The case was decided in December, 1879, but the opinion was afterwards withdrawn, and the case was held under advisement until March 23d, 1880. The papers have only come to the hands of the reporter very recently.

W. BOYLES, for the appellant.—A tenant may show that the title of his landlord is extinguished, or that it has passed from him by operation of law; and if the premises have been sold under execution against the landlord, the tenant may show this in bar of the landlord's action for rent.—*Pope v. Harkins*, 16 Ala. 324; *English v. Key*, 39 Ala. 115. Vogel and wife became the owners of the property by the act of Jewett, and succeeded to all of his rights under the lease; and Otis attorned to them, after notice. If he had failed or refused to pay rent to them, they could have evicted him; and his attornment to them was equivalent to an eviction. The lease was terminated by the act of Jewett, and by operation of law; and when Otis afterwards purchased from them, the term and the fee united in him, and the less estate was merged in the greater.—*Clift v. White*, 15 Barb. 70; *Reed v. Latson*, 15 Barb. 9; *Davis v. Thomas*, 6 Excheq. 856; *Wilcox v. Davis*, 4 Minn. 197; *Whyte v. Arthur*, 2 Green, N. J. Eq. 521; 1 Jones on Mortgages, 888. The effect of the redemption by Jewett is immaterial, since he afterwards conveyed in fee to Lyles, and the acceptance of the new lease from Lyles by Otis was, by operation of law, a surrender and extinguishment of the former lease, if it had not been already merged.—Taylor on Landlord and Tenant, 338; *Dennison v. Wertz*, 7 Serg. & R. 372; *Leonard v. Burgess*, 16 Wisc. 41; *Brown v. Parsons*, 22 Mich. 24; 4 Wait's Actions and Defenses, pp. 212–13.

JNO. T. TAYLOR, *contra*.—The doctrine of merger does not apply, because the right of redemption, outstanding in Jewett, intervened between the term and the fee; and a merger only takes place, when the greater and the less estate, legal and equitable, meet unconditionally in the same person, at one and the same time. Otis never had a fee, except coupled with an outstanding equity and legal right in a third person; and he never had any right to the term of ten years, because he had never paid anything for it, and he could not merge and destroy this outstanding right under a lease executed by himself.

Jones on Mortgages, 848–9; Taylor's Landlord and Tenant, §§ 502–04; 51 N. Y. 513. Nor was there any surrender and extinguishment of the original lease by the execution and acceptance of the new, since the acts of the parties rebut the idea of such surrender.— *Van Rennselaer v. Penniman*, 6 Wendell, 569; *Springstein v. Schermerhorn*, 12 Johns. 357; *Livingston v. Potts*, 16 Johns. 28; Taylor's Land. & T. §§ 507, 512.

STONE, J.—The title to the lot, for the rent of which this suit was brought, was originally in Jewett. On the 20th May, 1859, Jewett, in consideration of five hundred dollars, payable in quarterly installments, leased the premises to Otis, for the term of one year, to commence June 1st, 1859, "with the privilege, on the part of said Otis, of renting said land, mill and improvements, from year to year afterwards for the space of ten years, at the annual rent of one thousand dollars, payable in quarterly installments as above; upon which terms the lease of said premises shall be annually renewed to said Otis, on his request." At the expiration of this lease for one year, to-wit, on the first day of June, 1860, the contracting parties agreed to renew the lease, and indorsed the following agreement on the lease, which they severally executed with their signatures and seals: "The within lease is hereby renewed from the first day of June, 1860, upon the conditions therein mentioned, to-wit, to continue in force for the term of ten years from this date, at the annual rent of one thousand dollars, payable in quarterly installments," &c. On the 4th day of March, 1870, the contracting parties again renewed the lease, by indorsing the following agreement upon it, executed with their signatures and seals: "This lease is extended from the first day of June, 1870, to the first day of June, 1880, upon the same terms and conditions." While the body of the original lease evidently contemplated a letting from year to year, for the space of ten years, if desired by Otis, the lessee, the actual renewals indorsed on the lease, were each for a solid term of ten years. This was a modification of the original contract, which the parties were competent to make; and it is binding and valid, without further consideration than the mutual agreement of the parties. 1 Brick. Dig. 394, § 233.

After the second renewal of the lease, stated above, Jewett executed a trust deed, dated March 12th, 1872, by which he conveyed the lands, for the rent of which this suit is brought, to Bernstein, as trustee, to secure the payment of five thousand dollars to Caroline Schonfield, the beneficiary in the deed; with power in the trustee, in case Jewett made default, to advertise and sell the lands, for the payment of said sum of five

thousand dollars. The trustee, Bernstein, sold under the power contained in the trust deed, and Vogel and wife became the purchasers. A recital in the deed herein next described shows that the conveyance by Bernstein, the trustee, to Vogel and wife, bears date April 16th, 1874. On the first day of May, 1874, Vogel and wife, by quit-claim deed, conveyed all their interest in the lands to William Otis, the lessee. On the 16th day of March, 1876, Jewett redeemed said lands from Otis, under the statute, and received from him, Otis, a quit-claim deed, re-conveying the lands to him, Jewett. It is shown that the money, with which this redemption was effected, was obtained by Jewett from Lyles.

On the same day, March 16th, 1876, Jewett, for the recited consideration of $6,397.35, conveyed said lands to Lyles, by absolute deed of bargain and sale, with covenants of warranty, and also transferred and assigned to him the Otis lease. On the 15th day of April, 1876, Lyles executed a written agreement to Jewett, reciting that the deed from Jewett to him was received "with the agreement that he would sell said lot of land to said Jewett, for the sum of six thousand four hundred dollars, the amount the same cost, with interest from the 16th day of March, 1876," and therein bound himself, heirs, &c., "that on payment by said Jewett of said sum or sums of money to him, Lyles, heirs, &c., on or before the 16th day of March, 1877, he, his heirs, &c., shall re-convey said lot of land to said Jewett, his heirs or assigns." It was further stipulated, that there was "no debt existing from said Jewett to Lyles, in relation to said lot of land, and this transaction is a sale conditioned upon the prompt and actual payment, at the time named, of the sum or sums of money herein before named and described, and not in any manner a mortgage," &c.

It was, in said agreement, further "declared, that if, at any time before the purchase of said lot by said Jewett, if he make such purchase as he is, by this agreement, permitted to make, I (said Lyles) shall have leased said lot, or any part thereof, to any person or persons, or made any agreement as to the lease or renting thereof, such lease or agreement shall remain in full force and effect, and be valid and effectual against said Jewett and his assigns, except so far as the same may be changed, modified, or relinquished, by the voluntary act of the said lessee or his assigns." It was further stipulated in the said agreement, that if Jewett re-purchased, he was also to pay to Lyles "such amount of taxes and expenses as may be in excess of the income which Lyles may then have realized from said property."

On the 16th March, 1876, Jewett assigned and transferred to Lyles the lease of Otis, with all its renewals. At this stage

of the transaction, Otis denied all further liability on his part to pay rent for the premises, according to the terms of the lease he had taken from Jewett, and claimed he was absolved from the obligations thereof. Jewett claimed that Otis was still bound by the terms of the original lease and its renewals. This controverted question was not then settled or agreed upon between the parties. Lyles desired to realize rent for the premises, and Otis refused to pay him rent according to the terms of the lease he had received from Jewett. Thereupon Lyles executed a lease of the premises to Otis, bearing date 16th March, 1876, for the term of ten years, at an annual rent of eight hundred and fifty dollars, payable quarterly, with certain other stipulations in regard to repairs. This lease contains this clause: "If J. F. Jewett redeems before 16th March, 1877, then this agreement to be null and void, and of no effect." On the 20th May, 1876, Lyles re-conveyed said premises to Jewett by quit-claim deed, reciting that he, Jewett, had paid to him, Lyles, said sum of six thousand four hundred dollars. On the 29th of the same month, Lyles transferred and re-assigned said original lease to Jewett. On the same day, May 29th, 1876, Jewett assigned and transferred said original lease to McMillan & Sons. The bill of exceptions also states, that the property, the subject of the original lease, was conveyed by Jewett to McMillan & Sons, as security for money or credit obtained from them, with which Jewett redeemed or re-purchased the lands from Lyles.

On a single question of fact, there is an apparent conflict in the testimony. Some of the witnesses say, that when the title was conveyed to Lyles, he (Lyles) went into possession of the premises, and afterwards let them to Otis. Other witnesses say, Lyles never took possession, but only asserted his right to the premises as landlord, by force of the title he held. There is, also, evidence of an offer by Otis to surrender the possession to McMillan & Sons, when the title was put in them, and an agreement on their part to receive possession on certain conditions, which are not shown to have been complied with. No legal question is presented for our consideration, growing out of either of these phases of the evidence, and I do not feel called on to consider them. The record does not show any cancellation of the lease, by agreement of the parties, or that Otis was dispossessed, in fact, by any of his successive landlords. I am not able to perceive, or affirm that, as matter of fact, he has ever been dispossessed, or disturbed in his possession, since he first acquired possession under the original lease from Jewett. I think we must treat this case as if the continuity of Otis' actual possession has never been broken. The question is raised by charges given and excepted to, and asked

and refused, whether any or all of the conveyances mentioned above put an end to Jewett's second renewal of the lease to Otis, or authorized the latter to treat the lease as no longer binding on him? This is the question of merit in this case.

In Taylor's Landlord and Tenant, § 425, it is said: "The rights and liabilities of the respective parties to a lease are not confined to the immediate parties thereto, but will be found to attach to all persons to whom the estate may be transferred, or who may succeed to the possession of the premises, either as landlords or tenants. This result follows, as a necessary consequence of that privity of estate, which we have seen is incident to the relation of landlord and tenant, and which carries with it all those obligations which the original parties agreed should attach to, and continue to regulate that relation." And in section 426, the same author says: "A general grant of the reversion passes all the leases to which the property is subject, including the rents reserved, as incident to the grant." In *English v. Key*, 39 Ala. 113, it is said: "Rent is incident to the reversion; and the lessor's transfer of the reversion, though without the tenant's attornment to the assignee, or any express mention of the rent, carries with it the rent falling due thereafter." In *Pope v. Harkins*, 16 Ala. 321, this court, after stating that, when the relation of landlord and tenant is shown to exist, the tenant is estopped from denying the title of his landlord, added: "He may, it is true, show that the landlord has assigned his title, and that he is, therefore, bound as tenant to the assignee. This, however, is not disputing the title of his landlord, but it shows that he holds under, and in accordance with it, and that he owes rent to him who has the title which he acknowledged. * * If the premises are sold by execution against the landlord, the tenant may show this in bar of the landlord's action for rent, for the purchaser occupies the same relation to the landlord [tenant?] that a grantee by deed would."

In Washburne on Real Property, Vol. 1, marg. page 336, it is said: "Corresponding to the right of the lessee to assign or underlet his interest, is the right which the lessor has to convey or assign his reversion, and thereby bring in a new party, with the rights of a reversioner. Nor is it necessary, now, that the tenant should attorn to such grantor or assignee, to give effect to the grant or assignment, in those States where the statute 4 Anne, ch. 16, § 9, is adopted. * * As a general proposition, having few exceptions, the transfer of a reversion carries with it the rent due and accruing thereafter, by the lease creating the term for years, whether the assignment of the reversion be by deed or mortgage."

In *Dobson v. Culpepper*, 23 Gratt. 352, it is said: "The

[Otis v. McMillan & Sons.]

lessee, or vendee, does not dispute the title of his lessor, or vendor, in showing that the former has conveyed the title to another, since the lease or contract of sale; but thereby rather confirms that title. The benefit of the estoppel created by the lease, or the contract of sale, is not destroyed, but merely transferred by the lessor's or vendor's own act, from him to his assignee; and the lessee or vendee can thereafter no more dispute the title of such assignee, than he could, before, dispute the title of the lessor or vendor."

In the case of *Lancashire v. Mason*, 75 North Car. 455, the court, PEARSON, C. J., said: "It is familiar learning, that fealty and rent are incident to the reversion, and passes with it; and by a grant of the reversion, the assignee is substituted in place of the lessor, and the rent accruing thereafter is to be paid to him. After the assignment, the lessor has no more interest or concern in the matter, than the payee of a promissory note after he has indorsed it."—*Norton v. Snyder*, 2 Hun, N. Y. Sup. Ct. 82; *Duff v. Wilson*, 69 Penn. St. 316.

"Every conveyance of an estate in any hereditament, corporeal or incorporeal, is good and effectual without attornment of the tenant; but no tenant who has paid his rent, without notice of such conveyance, is liable therefor."—Code of 1876, § 2177. "No estate, nor interest of any person, can be defeated, discontinued, or extinguished by the act of any third person having a possessory or ulterior interest, except in the cases specially provided by this Code."—*Ib.* § 2184.

Under the redemption statute, speaking of lands that have been sold, and which it is proposed to redeem, it is declared that, "If the land is in possession of a tenant, notice to him by the purchaser or his vendee, of the purchase, after the lapse of ten days from the time of the sale, and that it has not been redeemed, vests the right to the possession in him, in the same manner as if the tenant had attorned to him."—*Ib.* § 2578.

It results from these principles, that a sale by a lessor of real estate, during an unexpired leasehold term, under which a tenant is holding, does not, of itself, abrogate the lease, determine the leasehold estate, or authorize the landlord or tenant to treat the lease as at an end. Its only effect is to substitute the vendee of the reversion to all the rights of the original lessor, and to transfer to such vendee the fealty and duty to pay rent under the lease, not then matured, which, by the terms of the lease, the tenant had bound himself to pay to the original lessor. The vendee then becomes the landlord, by operation of law, whose title the tenant, so long as he remains undisturbed in the possession, may not dispute; and the tenant becomes tenant of the vendee of the reversion, whose right to the possession, for the unexpired term, the landlord may not

gainsay, so long as the tenant complies with the terms of the lease. And the same result follows, when the sale is made under a mortgage or trust deed, junior to the lease, or under execution, or other similar sale, the lien of which is junior to the lease. The trust deed made by Jewett to Bernstein, trustee, the sale and conveyance by him to Vogel, did not put an end to the lease, or authorize Otis to treat it as annulled, any more than it would have authorized Vogel to dispossess Otis, if he had elected to do so. Vogel, by his purchase, succeeded to the rights, and only to the rights, which Jewett could have exercised before the conveyance.

Let us inquire what would be the result of the opposite doctrine. If the trust deed to Bernstein, and sale and conveyance to Vogel under it, or, if the deed to Lyles, or all these transactions combined, put an end to the lease, then what relation did Otis sustain to the holder of the legal title? Did he cease to be tenant, and could he then dispute the title of his landlord? Did he become tenant by sufferance, liable to be evicted at the will of the holder of the title, and that without previous demand of possession, or notice to quit? Did he stand in the relation of one holding over, after the expiration of the term of his lease, and liable to be evicted in a proceeding in unlawful detainer? And if he had ceased to be the tenant of the holder of the legal estate, was his holding adverse to the title of the true owner? All these questions, I apprehend, must be answered in the negative; and yet, on what principle? If Otis, notwithstanding the several transfers of title, still remained so far a tenant that he was estopped from setting up title or claim adverse to his landlord, who was his landlord? There can not be a tenant without a landlord. On the other hand, were not the successive holders of the title estopped from disturbing Otis in the possession of the leased premises, so long as the latter complied with the terms of the lease? If so, on what principle? Can it be that the several transfers of title, of their own unaided force, absolved the tenant from his obligations, but did not absolve the landlord? I think neither was absolved.

But Otis purchased from Vogel, and thereby became the owner of the freehold, of which he, as tenant, was in possession under the lease. It is contended for appellant, that when Otis acquired the title to the reversion, being both landlord and tenant, the leasehold or term, being the lesser estate, merged in the greater estate—became a fee simple, and thereby destroyed the relation of landlord and tenant. Such is evidently the usual effect, when the term and the right to the reversion concenter in one and the same person.— *Welsh v. Phillips*, 54 Ala. 309; Taylor's Landlord and Tenant, § 502; 4 Kent's Com., marg. 99. It is replied to this, that inasmuch as Otis, by his

[Otis v. McMillan & Sons.]

purchase, acquired only a defeasible estate in the reversion, subject to be defeated by Jewett's exercise of the statutory right of redemption within two years after Bernstein's sale, the doctrine of merger did not farther apply, than to suspend the relation of landlord and tenant, until Jewett actually redeemed; and that the act of redemption not only restored the title to Jewett, but re-established the relation of landlord and tenant, as it had existed before the sale. Upon a fair construction of our statute allowing the redemption of lands sold under execution, mortgage, &c., I feel forced to adopt this latter line of argument.—See Code of 1876, §§ 2877 to 2889, inclusive. The purchaser at such sale, it is true, acquires such title as the defendant in execution had; but he does not acquire an indefeasible title. It is liable to be defeated by payment, or tender, of the sum required by the statute to be tendered, if done within the time the statute prescribes; and, when so redeemed, the title and right to the possession re-vest in the redemptioner, in the same manner, and to the same extent as they were before the sale.—See section 2880, Code of 1876. Inasmuch as Otis, by his purchase from Vogel, acquired only the latter's estate, which was in fact defeated by the redemption, the merger, which was dependent on the purchase for its existence, must also be held to be determinable, and must cease when the estate which calls it into existence expires by its own inherent, statutory imperfection.—*Morris v. Beebe*, 54 Ala. 300. In the case cited, speaking of the *status* of the redemptioner after redemption; this court said: "He is in the estate, as a grantor entering at common law for breach of condition was, as of his original estate—as if there had been no sheriff's sale and conveyance."

Under statutory systems of other States, unlike the rulings under our statute, it is held that, when lands are sold under execution, until the time expires within which the defendant debtor may redeem, the purchaser acquires no title to the land; and, in fact, he obtains no deed from the sheriff until the expiration of the time allowed for redemption. Still, under some of these statutes, it is provided that the purchaser is entitled to the rents accruing after the sheriff's sale. Where this statutory regulation exists, the courts hold that this is a displacement of the landlord's claim of rent, only until the land is redeemed. I think these rulings are rather confirmatory of the views expressed above.—Freeman on Executions, sections 323, 349; *Borrell v. Dewart*, 37 Penn. St. 134; *Reynolds. v. Lathrop*, 7 Cal. 43; *Kline v. Chase*, 17 Cal. 596; *McDevit v. Sullivan*, 8 Cal. 592; *Knight v. Truett*, 18 Cal. 113; *The People, ex rel. v. Mayhew*, 26 Cal. 656; *Baber v. McLellan*, 30 Cal. 135; *Page v. Rogers*, 31 Cal. 293; *Webster v. Cook*, 3 Cal.

[Otis v. McMillan & Sons.]

423; *Slayton v. Morris*, 4 Har. 224; *Whiting v. Butler*, 29 Mich. 122. In New York it is held, that a purchaser at execution sale acquires no other interest in the land than a mere lien, until the sheriff's deed is executed, and that such deed cannot be executed until the time allowed for redemption has expired.

I do not think the provisional lease, executed by Lyles to Otis, can vary the result of this case. One of its express provisions was, that "if J. F. Jewett redeems before 16th March, 1877, then this agreement to be null and void, and of no effect." Under the terms of the agreement between Lyles and Jewett, the former could have changed the terms of the original lease to Otis, by entering into a new one, with inconsistent stipulations. He did not exercise that power or authority, so as to bind Jewett. This, after Jewett redeemed, left him and Otis unaffected by the agreement between Lyles and Jewett, which allowed the former to make a new letting, and alike unaffected by the lease taken by Otis from Lyles. Lyles failing to·exercise the authority Jewett had given him, to make a change in the lease so as to bind Jewett, expressly stipulated that, in the event Jewett re-purchased, the contract between him, Lyles, and Otis should be null and void. The effect of this was, that so far as Jewett's rights were concerned, they were left as if no contract had ever been made between Otis and Lyles.

Whether, in· the absence of an agreement, the purchaser at execution or mortgage sale can make a lease of the premises, which will bind the redemptioner after redemption· under the statute, I need not and do not inquire, as no such lease was made which contemplated its continuance beyond the act of re-purchase. My own opinion is, that the judgment of the Circuit Court should be affirmed. My brothers, however, differ from me, and hold that before McMillan & Sons acquired any title to, or interest in the premises, Otis was discharged from the obligations of the lease he took from Jewett, and from its several renewals. They will state their own opinions, and give their own reasons therefor.

The judgment of the Circuit Court is reversed, and the cause remanded. It may not be improper to add, that there can be no recovery on a complaint framed on the Jewett contract of lease.

BRICKELL, C. J.—The action was commenced by the appellees, as plaintiffs in the court below, claiming as assignees of John F. Jewett, and was founded on the covenants in a lease for the payment of rent, in which he was the lessor, and the appellant (Otis) the lessee. The lease was for a term of ten years, at an annual rent of one thousand dollars, payable quar-

terly.   During the lease, while the appellant was in possession, the lessor, Jewett, by deed of trust, conveyed the premises to Bernstein, as trustee, to secure the payment of a debt owing to one Schonfeldt, with power of sale in the trustee, if at maturity the debt was unpaid.   Default having been made in the payment of the debt, the trustee, Bernstein, in pursuance of the power, made sale of the premises; and one Vogel became the purchaser, receiving a conveyance.   Vogel bargained, sold and conveyed to the appellant, Otis; and from Otis, within the time prescribed by the statute Jewett redeemed, receiving a quit-claim conveyance.   On the same day Jewett conveyed in fee, with covenants of warranty, to Lyles, reserving the right to repurchase within a specified period, upon terms and conditions particularly expressed; the reservation expressly stipulating, that if, at the time of the re-purchase, Lyles should have leased the premises, or made any agreement as to the lease or renting thereof, such lease or agreement should remain in full force and effect, and be valid and effectual against said Jewett or his assignees.   Lyles leased the premises to the appellant, for the term of ten years, at an annual rent of $850.00, payable quarterly; giving to the appellant the right to purchase the premises, at any time within three years, at and for the sum of $6,500.00, if Jewett failed to re-purchase; the lease stipulating, that it should be void if Jewett re-purchased, and that the appellant should be paid for repairs and improvements upon the wharf.   Under the lease the appellant remained in possession, until Jewett re-purchased, and to him Lyles re-conveyed. The appellees, as assignees of the original lease from Jewett to the appellant, claimed to recover the rent according to the terms of the lease, from the time Jewett redeemed from the appellant.

The several rulings of the Circuit Court, assigned as error, present but two questions for consideration and decision, which may be thus stated: *first*, whether the lease from Jewett to Otis was not merged in the reversion, when that passed to Otis, by the conveyance from Vogel; *second*, whether, as matter of law, the lease was not yielded up—surrendered—by the making and acceptance of the new lease from Lyles.

There is no question that the lease was unaffected—that it was not defeated or extinguished—by the conveyance to Bernstein, or by the conveyance made by Bernstein to Vogel. When premises, subject to a lease for a term of years, are conveyed by the lessor, either by way of absolute conveyance, or by mortgage, or by deed of trust to secure the payment of debts, having the nature and characteristics of a mortgage, the grantee takes subject to the lease—he takes simply the reversion, the estate of the lessor.—*Burden v. Thayer*, 3 Met. 76;

1st Jones' Mortg. § 773; Taylor on Land. & Ten. § 632.    The right of the lessee to remain for the term in the use and enjoyment of the premises, according to the conditions of the lease, is not impaired or affected.    By the common law, the grant of the reversion was not effectual without the consent of the tenant of the land, and the consent was expressed by attornment to the grantee as landlord.    This rule of the common law never prevailed in this State, having been abolished by statute dispensing with attornment, rendering the conveyance valid and effectual, and protecting the tenant in the payment of rent made to his original landlord without notice that he had aliened or assigned the reversion. — Code of 1876, § 2177; *English v. Key*, 39 Ala. 113.

The conveyance to Bernstein, not severing the rent from the reversion, carried the rent as an incident to the reversion; and upon notice, the tenant, Otis, would have been bound to pay to him all rents subsequently accruing.—1st Jones' Mort. § 774; *Russell v. Allen*, 2 Allen, 42; *Mirick v. Hoppin*, 118 Mass. 582; *English v. Key, supra.*    The legal effect and consequence was, that Bernstein became the landlord of Otis, bound to the duties and obligations of Jewett as landlord, and, upon giving notice to Otis, entitled to Jewett's rights under the lease.

The sale made by Bernstein, in pursuance and execution of the power contained in the deed to him, cut off the equity of redemption of Jewett in the reversion.    The sale as completely and effectually barred the equitable right to redeem, as a decree of strict foreclosure in a court of equity.—4 Kent, 191; 2 Wash. Real Prop. 78; *Childress v. Monette*, 54 Ala. 317; *Hyde v. Wurren*, 46 Miss. 13; *Eaton v. Whiting*, 3 Pick. 492; *Kinsley v. Ames*, 2 Met. 29; *Brisbane v. Stoughton*, 17 Ohio, 482.    The legal and equitable estates were united in Vogel, the purchaser, and he became the landlord of Otis, bound to protect him for the term in the enjoyment of the premises, and entitled, upon giving notice, to all rents subsequently falling due.    There remained to Jewett no more than the statutory right of redemption, which is not property, or a right of property, but a bare privilege, the nature of which will be hereafter considered.    After Vogel became the assignee of the reversion, Otis ceased to be the tenant of Jewett, and became the tenant of Vogel, to whom he was bound to pay rent.    Into this new relation he was compelled by the conveyance of the reversion by Jewett.    The consequence was, that Jewett was estopped from thereafter claiming and treating Otis as his tenant.    While a tenant is estopped from denying the title of the landlord, there is a like estoppel upon the landlord from treating as tenant him whom he has required to enter into that relation with another.—*Downs v. Cooper*, 2 Ad. & Ell. (N. S.) 256 (42 Eng. C.

L 663). The estoppel resting upon a tenant, precluding him from disputing the title of the landlord, refers to the title the landlord had at the time the lease was made. The tenant is. not estopped from showing that the title of the landlord has expired; or that the landlord has transferred it, not reserving the rents; or that by operation of law it has passed to another; or that, subsequent to the lease, it has been sold under a judgment or decree.—2 Smith's Leading Cases, 779; *Randolph v. Carlton*, 8 Ala. 606; *Pope v. Harkins*, 16 Ala. 321. This, as was said by DARGAN, C. J., in the case last cited, "is not disputing the title of his landlord, but it shows that he holds. under and in accordance with it, and that he owes rent to him who has the title which he acknowledged." In the recognition by Otis that Bernstein and Vogel had succeeded to the title of Jewett, and bore to him the relation of landlord, which Jewett had borne, there was no disputation of the title of Jewett, no renunciation of the fealty he was bound as tenant to yield. There was simple obedience to the law, which required him, having notice of the assignment of the reversion, to pay rent, and yield recognition, to the title and dominion of the assignee.

The sale under the power in the deed of trust, operating as a decree of strict foreclosure, cutting off the equity of redemption, uniting in Vogel, the purchaser, the legal and equitable estate in the lands, operated to divest Jewett of all right, of all title, interest and claim, in and to the premises. If the statutory right of redemption, which remained to Jewett, does not change well-settled principles of the common law, Vogel could rightfully sell and convey to the tenant, Otis. To Otis, Vogel stood in the relation of landlord; and upon his conveyance in fee to Otis, that relation was dissolved. The term for years was defeated; it was merged in the reversion expectant thereon. "A term for years may be defeated, by way of merger, when it meets another term immediately expectant thereon. The elder term merges in the term in reversion or remainder."—4 Kent, 99; Taylor's Land. & Ten. §§ 502–3. The lease and the reversion meeting and uniting in Otis, the greater estate merged and drowned the less.— *Welch v. Phillips*, 54 Ala. 309. *Nemo potest esse dominus et tenens*, is the doctrine of the law, subject, it is said, to fewer objections, than any other principle which has been given as the foundation of the doctrine of merger. The creditor and debtor of the same debt can not, at the same time, be the same person; the same person, as to the same matter, can not in a suit, at one and the same time, stand in the antagonistic relation of plaintiff and defendant. There can be no greater absurdity, than to place Otis in the relation of being his own landlord, and his own tenant, at one and the same time; bound himself to pay, and to receive rent. "There would be

an absolute incompatibility," says Ch. Kent, "in a person fill-
ing at one and the same time the character of tenant and rever-
sioner in one and the same estate; and hence the reasonable-
ness, and even necessity, of the doctrine of merger."—4 Kent,
100.

But, if this were not true, it does not seem to admit of a
reasonable doubt, that when Lyles leased to Otis, and Otis
accepted the lease, upon terms essentially different from the
original lease by Jewett, that lease, as matter of law, was ex-
tinguished—it was yielded up, surrendered. Lyles was the ab-
solute, unqualified owner of the reversion. Otis bore to him
the relation of tenant, bound, if there had not been a merger,
to pay him the rent reserved in the original lease. There was
in Jewett the mere right to re-purchase the premises, and that
right was qualified—was subjected to the condition, that if, at
the time of the re-purchase, Lyles had leased, or agreed to lease,
the premises, such lease or agreement should remain of force.
There could not have been more clearly expressed the intention
of Lyles, and of Jewett, that the right of re-purchase was not to
embarrass the power of Lyles to lease. · If they had supposed that
the original lease remained of force, or that Lyles was without
power to alter it, there would be here a grant to him of power
to extinguish it. There is an express, clear recognition of the
power of Lyles to lease the premises, and a stipulation that, if
he exercised the power, the lease should remain unimpaired.

Lyles having the reversion, by agreement between him and
Otis, the term of years could be extinguished. If by agreement
the term was surrendered to Lyles, it was extinguished. When
the new lease was made and accepted, by operation of law, as
matter of necessity, the original lease was surrendered. The
new lease could not have been granted, unless the original lease
had been surrendered, or had been merged in the conveyance
of the reversion to Otis. The original lease comprehended the
very term the new lease granted.—Kent, 104; Taylor's Land-
lord and Tenant, 507. "If," says Coke, "the lessee for years
take a new lease for years, it is a surrender in law of the former
lease; for the first lease and the second can not subsist together,
and·the parties, by making a contract of as high a nature for the
same thing, tacitly consented to dissolve the former; for, without
the dissolution of that, the lessor could not grant to the lessee that
interest which was already passed from the lessor to the lessee
by the first lease." In Taylor's Landlord and Tenant, *supra*,
it is said : "Where a lessee for years accepts a new lease from
the lessor, he is estopped from saying that the lessor had no
power to make the new lease; and, as the lessor could not grant
the new lease, until the prior one had been surrendered, the
acceptance of such new lease is, of itself, a surrender of the

former one.　Such surrender is the act of the law, and takes place independently of, and even in spite of the intention of the parties."　That the new lease was to terminate on Jewett's re-purchase of the premises can not vary the question.　There was, nevertheless, the grant of a new lease for a term comprehended in the original lease, which could not have been made leaving that lease of force.　It is the inconsistent grant, which constitutes, in contemplation of law, the surrender, and not the duration of the term, or the conditions upon which it is made.

It is insisted, however, that Otis, by the conveyance from Vogel, acquired an estate upon condition in the premises, a fee defeasible, if within two years from the sale by Bernstein, the trustee, Jewett redeemed under the statute; and that the merger of the lease in the reversion was conditional,—dependent upon the redemption : that when the redemption was made, Jewett and Otis were restored to their original relations—the lease saved from merger, and revived with all its obligations and covenants.　The right of redemption is purely statutory, and must be taken and accepted as the statute defines and declares it.　It is secured only to defendants in execution, or to parties whose lands are sold by decrees in chancery, or to a mortgagor, or grantor in a deed of trust, the mortgage or deed of trust having a power of sale.—Code of 1876, § 2877.　To judgment creditors, also, the right of redemption is secured; but the nature of that right is not now open for consideration. It is not possible to read the statute, without ascertaining that it is not intended to reserve to the party whose lands are sold any right, estate, or interest in the lands; that the purchaser does not hold the lands in mortgage, or upon any theory or idea that there is any relation subsisting between him and the former owner of the lands.　If the former owner is in possession at the time of the sale, he is bound within ten days to surrender it, on demand, to the purchaser, and failing, forfeits the right of redemption ; or, if the possession is in a tenant, upon notice, he becomes the tenant of the landlord, as if to him he had attorned.—Code of 1876, § 2878.　The purchaser takes the rents and profits, and for them he is under no liability to account—no benefit from them accrues to the party coming to redeem.　Whatever may be the amount of such rents, though they may exceed the amount bid and paid for the lands, the party coming to redeem is bound to pay the purchase-money, and ten per-cent. *per annum* interest thereon—the amount he would be compelled to pay, if no rent had issued from the premises. The whole value of the premises may consist in improvements ; the purchaser may remove them, without subjecting himself to impeachment for waste, or liability to account for them, if there is subsequently a redemption.—*Kannon v. Pillow*, 7

Humph. 281. The entire and absolute estate is vested in the purchaser: there remains to the judgment debtor no ulterior interest in the lands—no estate to which he can succeed upon redemption.— *Woods v. McGavock,* 10 Yerg. 133 ; *Spoor v. Phillips,* 27 Ala. 193 ; *Camp v. Simon,* 34 Ala. 126.

In *Spoor v. Phillips,* it is said, and repeated in *Camp v. Simon,* " the purchaser becomes the absolute owner, and, entering into possession, is entitled to the rents and profits. Nothing is left in the former owner, or in his judgment creditors, but the naked right to redeem ; which is lost, if not asserted in the time and manner prescribed by the statute." The whole purpose of the statute is, not the reservation of any estate or interest in the lands to the judgment debtor or mortgagor—it is not to confer on the purchaser a present, and on the judgment debtor or mortgagor an ulterior, remote, or succeeding estate ; but it is to confer on the debtor, or mortgagor, a naked right or privilege, not having the elements of property, or a right of property, which he may or not exercise at his option. The purchaser is the absolute owner, and may exercise the dominion of absolute ownership. The consequence is, that when Otis became the assignee of the reversion, he was the absolute owner, and the term for years was merged in the higher estate. Upon the redemption, Jewett was restored to his original title, but not to the lease for years, which was merged in the higher estate, which was restored to him, and was incapable of being revived without the consent of Otis. No other construction of the statute seems to be just and reasonable. That the beneficial ownership should rest in abeyance—that the purchaser should be deprived of it for two years, awaiting the exercise of the statutory right of redemption, is not contemplated. The unreasonableness and injustice is apparent, if we suppose a case in which there has been a lease for a long term of years, at an inconsiderable and inadequate rent. Is the purchaser precluded from contracting with the lessee for a surrender, and the making of a new lease upon an adequate rent? If he does by surrender acquire the old lease, and makes the new lease, when the redemption occurs, can the tenant claim the old lease is revived, and that he can hold under it for the unexpired term? If the redemption terminates the merger, it must operate as well when it would be prejudicial, as when it would be beneficial to the party making the redemption.

But there is yet another consideration. Lyles was the absolute owner of the fee. The statutory right of redemption was not attached to his estate, and could not have been claimed to divest it. There was simply the reservation by Jewett of a right to re-purchase. The right was burdened with the condition, that it was subject to the power of Lyles to lease the

premises. The lease he made to Otis is incapable of any other operation, than as an unqualified surrender and extinguishment of the original lease. The two were incompatible—could not subsist together.

The rulings of the Circuit Court were not in conformity with these views; and its judgment must be reversed, and the cause remanded.