[Griffin v. Dauphin.]

# Griffin *v.* Dauphin.

133 543
132 651

*Statutory Action of Ejectment.*

1. *Execution; not void because costs in justice of the peace court were not itemized.*—An execution issued upon a judgment rendered by the circuit court in a cause brought there by appeal from a justice of the peace court, is not vitiated by the fact that among the items of costs endorsed thereon, the magistrate's fees are shown only by their gross amount.

2. *Judicial sale; not affected by maintenance or adverse possession.* A judicial sale made by a public officer under legal process, is not without the doctrine of champerty or maintenance; and its validity is not affected by the fact that the land is, at the time of the sale, in the possession of a third person claiming adversely to the defendant in the process.

3. *Same; effect on the possession of third person through tenant.* Where, at the time of a sale under execution of land in the possession of tenants of a third party who claim under a deed from the defendant in execution, which deed was executed subsequent to the issuance of the execution, the judicial sale of such lands terminates the tenancy; and the attornment of the tenants of said third party to the purchaser has the legal effect of transferring the possession of the lands from such third party to the purchaser, and the right of said third party acquired by his deed from the defendant in execution is thereby defeated; the sheriff's deeᵤ to said purchaser conveying such title as the defendant in execution had on the date of its issuance. .

APPEAL from the Circuit Court of Covington.

Tried before the Hon. JOHN P. HUBBARD.

This was a statutory action of ejectment, brought by the appellee, J. M. Dauphin, against the appellant, J. P. Griffin, to recover certain lands specifically described in the complaint. The defendant pleaded the general issue, and the cause was tried upon issue joined upon this plea.

The plaintiff based his right to recover upon the following facts: One T. E. Chesser sued one J. J. Harralson

in a justice of the peace court. On appeal to the circuit court, judgment was rendered in said cause in favor of Harralson for the costs of the suit. From a judgment rendered in the circuit court, an appeal was taken to the Supreme Court, where the judgment was affirmed on the 29th day of October, 1898. On November 22, 1899, an execution was issued out of the circuit court of Covington county on said judgment against Chesser, and was, by the sheriff, levied upon the lands involved in this suit, on January 6, 1899. On April 17, 1899, the lands were sold under the levy of an execution. One L. J. Salter became the purchaser at said sale and a deed was executed to him by the sheriff on April 17, 1899. On November 7, 1899, said Salter conveyed the lands to the plaintiff.

The defendant's claim to the land was based upon a deed executed to him by T. E. Chesser, the defendant in execution, which deed bore the date of December 6, 1898.

The plaintiff offered in evidence the execution issued upon the judgment recovered by Harralson against Chesser. Attached to this execution was the bill of costs. The clerks' fees, the sheriff's fees and the witness' fees were itemized in this bill of costs, but the fees of the justice of the peace were stated in the bill of costs in the gross amount. The defendant objected to the introduction of the execution in evidence, (1) because it was illegal; (2) because said execution was void; and (3) because the magistrate's fees set out in said execution were not itemized. The court overruled the objection, and the defendant excepted.

L. J. Salter, as a witness for the plaintiff, testified that after he purchased the lands involved in the suit at the execution sale, and received the sheriff's deed thereto, he demanded possession of said lands from one Langston, who was tenant in possession, and demanded the rent then due for said lands; that Langston recognized him as his landlord and attorned to him as such, and, thereafter paid the rent to him, Salter, for said lands. Salter further testified that he executed the deed to the plaintiff Dauphin after Langston had attorned to him as landlord. The defendant as a witness in his own behalf

testified that he bargained for the land with Chesser in December, 1898, and that although the deed to said land was not delivered until April, 1899, he rented the lands to Langston for the year 1898, after the contract of sale was made between him and Chesser; that on November 7, 1899, at the time Salter executed the deed to the plaintiff, he, the defendant, was in possession of, said land, claiming the same as his own, through his tenant Langston; that in January, 1900, he went into possession of said lands and was so in possession claiming said lands as his own at the time of the institution of this suit.

The court at the request of the plaintiff gave the general affirmative charge in his favor. The defendant excepted to the giving of this charge, and also separately excepted to the court's refusal to give each of the following charges requested by him : (1.) "If you believe the evidence, your verdict should be for the defendant." (2.) "If at the time of the execution of the deed from Salter to the plaintiff the defendant was in possession of the lands sued for through tenants, and through such tenants claimed said lands as his own and adversely against the claims of all persons, your verdict should be for the defendant." (3.) "If L. J. Salter was not in the actual possession of the lands sued for at the time of the execution of his deed to plaintiff, you should find for defendant." (4.) "If from the evidence you are reasonably satisfied that defendant, Griffin, through his tenants, was in the actual adverse possession of the lands sued for, claiming the same as his own against all persons, at the time of the execution and delivery of the deed by Salter to the plaintiff, you should find for the defendant."

There were verdict and judgment for the plaintiff. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

POWELL & ALBRITTON, for appellant.—The execution offered in evidence was void, and, therefore, not admissible.—Code, §§ 484, 1883; *Maxwell v. Pounds,* 116 Ala. 551.

The court below erred in giving the general affirmative charge requested by the appellee, and refusing the gen-

35c

eral affirmative charge requested by the appellant. *Pearson v. King,* 99 Ala. 125; *Davis v. Curry,* 85 Ala. 133.

A. L. RANKIN, *contra.*—Salter's entry on the land under paramount title constituted an eviction and this justified Langston in accepting him as his landlord and paying rent to him in order to keep from being ousted and losing his growing crop.—12 Amer. & Eng. Ency. of Law, 758c, § 5; *Warren v. Wagner,* 75 Ala. 188.

Langston's attorning to Salter terminated his tenancy with Griffin and put Salter in possession.—12 Amer. & Eng. Ency. of Law, 757y, § 4; *Warren v. Wagner,* 75 Ala. 188.

SHARPE, J.—In *Maxwell v. Pounds,* 116 Ala. 551, and again in *Marks v. Wood, ante,* p. 533, it was held that an execution issued from the circuit court having indorsed thereon a statement of the costs, but without itemization of the costs as required by section 1883 of the Code, is by the terms of that statute made void. In the same section the statement to be indorsed on the execution is referred to as a "copy of the bill of costs." Since there is no law requiring any officer of the circuit court to keep an itemized account of costs accruing in ca appealed from a justice court, we are of the opinion that the bill of costs which under the Code section referred to must be shown by items on executions from the circuit court, are such only as under the statutes are required to be kept by the officers of that court, and hence that the execution in question is not vitiated by the fact that among the items of costs indorsed thereon magistrates' fees purport to be shown only by a statement of their gross amount.

The doctrine of champerty which inhibits and makes void a sale of land in possession of a third person under a claim of right has no application to judicial sales. *Humes v. Bernstein,* 72 Ala. 546. It is immaterial, therefore, that defendant had through his tenants possession of the land when plaintiff's vendor Salter bought the land at the execution sale.

[Griffin v. Dauphin.]

As bearing on the question of whether Salter's convey-
ance to plaintiff was champertous the facts are as fol-
lows:   The execution under which Salter bought was is-
sued against Chesser on November 22, 1898.  Defendant
bargained with Chesser for the land in December follow-
ing and placed tenants on it in that or the next month.
He received a deed from Chesser which bears date as of
December 6th, 1898, but which was not executed by de-
livery until April or May, 1899.    Salter immediately
after his purchase at execution sale demanded possession
of defendant's tenants and they agreed to yield posses-
sion.   Thereupon without leaving the premises those ten-
ants rented the lands from Salter and thereafter they
remained in attornment to Salter until he sold to plain-
tiff.

As a general rule a tenant is bound to recognize his
landlord's title and being under the legal obligation to
restore the premises to his lessor when he quits, his mere
attornment to a stranger is ineffectual to break the con-
tinuity of the landlord's possession.   But this rule is
not without exceptions, one of which obtains where the
landlord's right has been subsequent to the lease termi-
nated by an execution sale.—*McCurdy v. Houston,* 74
Ala. 162; *Randolph v. Carleton,* 8 Ala. 606; *Pope v. Har-
kins,* 16 Ala. 321; *English v. Key,* 39 Ala. 113; *Otis v.
McMillan,* 70 Ala. 46.

The law in such case terminates the tenancy and justi-
fies the tenant in attorning to the execution purchaser
without waiting for eviction.    His attornment under
such circumstances effects a legal transfer of the posses-
sion from the original landlord to the purchaser.   The
right acquired by Salter at the execution sale related
back to the inception of the lien created by the issuance
of the execution and so was prior to defendant's pur-
chase.   The lien culminated in the sheriff's sale and his
deed conveyed to Salter such title as Chesser had on No-
vember 22, 1898, thereby defeating such right as defend-
ant acquired thereafter by his purchase.—*Randolph v.
Carleton,* 8 Ala. *supra.*   The subsequent attornment of
his tenants to Salter operated to transfer his possession
to Salter, and it was not regained until after the latter

conveyed to plaintiff. The evidence being free from material conflict, the jury were properly charged in favor of the plaintiff.

Affirmed.