## BUELL v. SIMON NEWMAN CO.
### Civ. No. 5023.

District Court, N. D. California, N. D.

June 20, 1945.

J. Everett Barr, of Yreka, Cal., for plaintiff.

Treadwell & Laughlin, of San Francisco, Cal., for defendant.

WELSH, District Judge.

Plaintiff sued defendant for rentals which he claimed exceeded $3,500, and became due under a lease by Montague Water Conservation District (hereinafter referred to as the "District"). The said plaintiff is the trustee in the matter of the Montague Water Conservation District, Bankruptcy No. 10,503 in this court. Said lease was made and entered into by and between said District and defendant on the 1st day of January, 1944. A copy thereof is attached to plaintiff's complaint as Exhibit "A".

Defendant denied in its answer that any rent was due and alleged that at the time said lease went into effect the crop of grain on the lands so leased was about six inches high; that on the 27th day of May, 1944, said District sold and conveyed all of the leased property to defendant in consideration of the payment of $32,420.85, at which time said lease was merged in the title of said land; and that said plaintiff executed and delivered to plaintiff a release of any claims, a copy of which was attached as Exhibit "A" to said answer.

Plaintiff moved to strike said affirmative defenses and said exhibit from defendant's answer.

The parties stipulated as to certain facts, the material portions of which stipulation are as follows:

"II. On the 1st day of January, 1944, defendant and Montague Water Conservation District entered into the written lease, Exhibit 'A' attached to the complaint.

"III. At the time of the execution of said lease and at the time that said lease went into effect on the 1st day of January, 1944, there was a crop of grain planted on said property. On the 27th day of May, 1944, the District sold and conveyed the leased land to defendant in consideration of the sum of $32,420.85. Up to that time the crop of grain was about six inches high and no crops of any kind had been taken off said land. At a later date

the crop was matured and harvested by defendant, and one-quarter of said crop as matured and harvested was of the value of $3,327.00.

"IV. The Court may take judicial notice of the proceedings in Montague Water Conservation District, bankrupt, No. 10503, and the agreement of composition therein, and it is stipulated that in Paragraph VIII of said agreement it was provided that 'All income from rents and royalties accruing after December 31, 1943 upon lands now owned by the District shall belong to the bondholders'.

"V. On the 18th day of November, 1944, W. E. Buell, in consideration of the payment to him of said sum of $32,420.85, made, executed and delivered the certificate marked Exhibit 'A' attached to the answer herein."

Both the lease and the release above mentioned refer to the agreement of composition, dated the 6th day of December, 1943, between plaintiff herein and the District.

The lease recited that it was "executed by the lessor and accepted by the lessee in full understanding of, and subject to all the rights, privileges, restrictions, duties and obligations of the lease under the terms and conditions of a certain plan of Municipal Debt Readjustment and petition for confirmation now on file in the United States District Court for the Northern District of California, Northern Division, and numbered 10503 therein." It thereby put both of its executing parties on notice as to the terms and provisions of said plan and the court proceedings with respect thereto. Said plan contemplated the full release of all lands whereon payments of the amounts specified in said agreement were made.

Said release also referred to the same plan. It recited: "In consideration of the above payment, and pursuant to the provisions of that certain contract dated Dec. 6th, 1943, and entered into by and between W. E. Buell and the Montague Water Conservation District * * * (Buell) does by these presents forever release the hereinafter described real property, located in the boundaries of the Montague Water Conservation District from any liability for the payment of the present outstanding bonds and interest thereon of the Montague Water Conservation District."

This, again, emphasizes that all transactions between the parties to this litigation and the District, subsequent to December 6, 1943, were conditioned upon and made pursuant to the said agreement between plaintiff and said District on said December 6, 1943.

The primary purpose of all the dealings of plaintiff, defendant and said District was to carry out the intentions of the contracting parties to the first agreement of December 6, 1943. Included among such intentions appears that of inducing former owners of the lands in said District to buy back such lands from the District so that revenue could again be derived therefrom.

Evidently this purpose was accomplished as to the lands herein involved, for defendant raised sufficient funds to consummate a deal. The amount of the price, to-wit, $32,420.85, was satisfactory to both plaintiff and defendant. That this was entirely satisfactory is shown by the fact that neither party has sought to avoid responsibility under either the sale or the release. It does not seem reasonable for this suit to be maintained as an aftermath.

Said plaintiff and defendant, when so contracting on November 18, 1944, must have had in contemplation that the price agreed upon was the full amount which defendant was to pay and plaintiff was to receive. As reference was directly made to the agreement of December 6, 1943, between plaintiff and the District, said plaintiff must have realized that his delivery of the deed to defendant would end the payment of money to him by defendant by reason of any and all transactions then, and theretofore, had between them.

The original document referred to by the parties as the agreement of composition was filed in this court on the 10th day of December, 1943. It was therein recited that said parties submitted a plan of adjustment in accordance with the provisions of Sections 81 to 84 of the United States Bankruptcy Act, 11 U.S.C.A. §§ 401–404; that said Buell, as trustee for all bondholders, would accept from any individual landowner in the District in full settlement of the liability of such landowner for the payment of all his outstanding bonds and coupons of the District, whether due or to become due, the amount set forth in Exhibit "B", attached thereto, opposite the description of such land.

Certain land described in said Exhibit "B" was designated "Tract No. 62 District—formerly Simon Newman Company ....135.1 acres."

It was further recited that if the specified "cash price" were paid in cash on or before ninety days after the final confirmation of this plan by the United States District Court as provided in paragraph 3 of said agreement, said Buell would give full releases therefor.

It was also provided, in paragraph 8, "all income from rents and royalties accruing after December 31, 1943, upon lands now owned by the District shall belong to the bondholders."

Plaintiff's contention in his complaint herein is that said bondholders thereby became entitled to the sum of $3500, by reason of the lease (Exhibit "A" to said complaint), which provided that the lessee will deliver to the lessor, or its order, one-fourth of all of the proceeds and crops produced on said premises of every kind and description.

It was further provided, in paragraph 9, of said agreement that whenever land had been released from obligation pursuant to said agreement, the said trustee would make, execute and deliver to the owner of such land a release substantially in the form of Exhibit "C" thereto attached. Exhibit "A" annexed to defendant's answer is substantially in the form of said Exhibit "C" attached to said agreement of composition.

The Court is inclined to agree with defendant that the execution of said release, taken in conjunction with all the other documents stipulated to have been executed, indicated that not only the land, but defendant, as the purchaser thereof, was released from any further liability for payments to the District or to plaintiff as trustee.

One of the cardinal rules in the interpretation of contracts is that courts should endeavor to ascertain the intention of the parties.

The District and the defendant when entering into the crop lease used the expression "proceeds and crops produced on said premises" with reference to the percentage of one-fourth which the lessee (defendant) was to deliver to the lessor (District). This indicates that they intended that the crops should be matured and harvested before the percentage would become due to the District. Otherwise, there would be no "proceeds" to pro rate. Neither would there be any crops to divide. That such was the intention is further indicated by the reference to hay and grain, thus—"any and all hay produced to be divided on said premises in stack; all grain to be divided and lessor's share to be delivered to Montague Water Conservation District at Montague, California, either in cars or to the warehouse in Montague, California, of the said lessor in seasonable time after such crop shall have been gathered and harvested."

Obviously the hay could not be delivered until it had been cut and stacked. The grain could not be divided or delivered as provided until after it had been "gathered and harvested."

The stipulation as to facts sets forth that on the 27th day of May, 1944, when the District sold and conveyed the leased land to defendant, "the crop of grain was about six inches high and no crops of any kind had been taken off said land." There was, at said time, therefore, no crop to divide, and there were no proceeds to pro rate.

There was, accordingly, not sufficient evidence to sustain plaintiff's allegation that there was due from defendant rentals in the amount of $3,500, or thereabouts.

Defendant set up in its answer that the lease was merged in the title of said land when it made the purchase from the plaintiff; that upon the vesting of the title in defendant, no part of said property or the crop thereon, as rent or otherwise, belonged to the District or to plaintiff.

It was said in Jameson v. Hayward, 106 Cal. 682, 683, 39 P. 1078, 1080, 46 Am. St.Rep. 268: "* * * equity will prevent or permit a merger as will best subserve the purposes of justice and the actual and just intent of the parties." What has been said hereinbefore indicates the view of this Court with reference to the intention of the District and plaintiff in entering into the lease. It is our further view that plaintiff, by the terms of the agreement of December 6, 1943, and of the release of November 18, 1944, intended that all liability of defendant with respect to the District, the bondholders and plaintiff acting in his representative capacity, would be discharged by the payment of the sum of $32,420.85 when he delivered to it the deed.

It is likewise our view that the purposes of justice will be best subserved by holding that no rent was due from defendant to plaintiff at the time of the commencement of the above-entitled action. It would be unconscionable, under the circumstances of this case, to require defendant to pay

160

plaintiff rental on a crop which was but six inches high at the time defendant became the owner of the land whereon said crop was growing.

■ The doctrine of merger is well explained in annotation in 143 A.L.R. 93–132. It is therein stated that "whenever an estate for years and a greater estate vest in the same person without any intermediate estate, the estate for years is merged in the greater estate." (p. 96, of 143 A.L.R.)

Otis v. McMillan & Sons, 70 Ala. 46, is cited on the point: "There can be no greater absurdity, than to place Otis in the relation of being his own landlord and his own tenant at one and the same time." (p. 97 of 143 A.L.R.)

Chancellor Kent is quoted: "There would be an absolute incompatibility in a person filling at one and the same time the character of tenant and reversioner in one and the same estate; and hence the reasonableness, and even necessity, of the doctrine of merger." (p. 97 of 143 A.L.R.)

The Annotator states on page 124 of 143 A.L.R.: "Where a leasehold estate for years is absorbed by the operation of the doctrine of merger, the lessee's obligation to pay rent is terminated."

Erving v. James H. Goodman & Co. Bank, 171 Cal. 559, 153 P. 945, and other California cases, together with several other jurisdictions are cited in support thereof. In the Erving case it was said (page 563 of 171 Cal., page 946 of 153 P.): "That when the fee vested in the bank's predecessor, the covenant to pay rent for the realty became of no effect."

■ We believe that a reasonable construction of all the agreements referred to in the pleadings and the stipulation as to facts, and the proceedings in the bankruptcy matter, of which this Court is to take judicial notice pursuant to said stipulation, leads to the conclusion that the bondholders, on whose behalf plaintiff is acting, are not entitled to receive the allotted payment of $32,420.85 made by defendant as a purchaser of the lands, and rentals in addition.

It is therefore ordered that plaintiff's motion to strike be, and the same is, hereby denied, and that defendant have judgment, with costs.

Counsel for defendant will prepare findings.